### BYERS v. F. T. PEARCE CO.

(District Court, D. Rhode Island. December 30, 1915.)

#### Equity No. 46.

PATENTS ☜328—VALIDITY AND INFRINGEMENT—DESIGN FOR PENCIL CLIP.
   The Byers design patent, No. 45,102, for a design for a pen or pencil clip in the form of a serpent, to avoid anticipation by the prior art, must be limited to the special configuration shown, and, as so construed, *held* not infringed.

In Equity. Suit by George T. Byers against the F. T. Pearce Company. On final hearing. Decree for defendant.

Stephen J. Casey, of Providence, R. I., for complainant.
Horatio E. Bellows, of Providence, R. I., for defendant.

BROWN, District Judge. The bill, filed January 14, 1915, charges infringement of design letters patent to George T. Byers, No. 45,102, January 6, 1914, on application of April 14, 1913, for design for holding clip for pens and pencils.

The drawing shows a serpent with coils surrounding a pencil, the tail having a peculiar twist, and the head and neck extending lengthwise of the pencil to form the engaging end of the clip.

The mechanical features of the clip were old. The patent to Lind-

berg, No. 769,951, September, 1904, shows a pencil clip with coils of wire around the pencil and a longitudinal extension of the wire curved to form a spring arm adapted to engage a pocket. The patent to T. K. Felch, No. 1,021,878, April 2, 1913, application of March 24, 1911, shows in the drawings a pencil clip with spiral coils. The engaging end of the clip is ornamented with scales and with a serpent's head, which bears some resemblance to the head of complainant's snake. The engaging end of the clip projects obliquely.

The patentee, Byers, testified that he had decorated pencils with snake ornaments for about 15 years, and produced in evidence a penholder ornamented with a coiled snake (Exhibit 4), which he stated was made in 1905. As an ornamental design for a pencil or pen it resembles the patented design. The head portion, as well as the body portion, is, however, attached close to the body of the pen, and thus cannot perform the mechanical function of a clip.

The snake of this exhibit of 1905 is made from the same dies used to manufacture the snake from which was made by bending, the pencil clips of Complainant's Exhibits 6 and 8.

It appears that, to adapt Byers' old snake ornament for use as a clip, it was bent into a somewhat different and less artistic form, in order to meet the mechanical requirements of a clip.

It is a somewhat curious fact that both the complainant and defendant made their first snake clips out of old stock snake blanks that were commonly used for ornamentation, being made by a die in straight form, and of material suitable to be bent as desired.

The patentee, Byers, testified that he had used for many years his snake ornament bent into different shapes. It appears, also, that the T. W. Lind Company, of Providence, R. I., had made from their snake die No. 932, for from 20 to 25 years, snakes in straight form, which they sold as ornaments, and that the first snake clips made by the defendant were made of such Lind snake blanks No. 932 merely by bending them into the proper shape to meet the mechanical requirements of a pencil clip.

So far as can be judged from the drawing of the Byers patent, and from complainant's exhibits of clips made by him, the only changes made by Byers from his stock form were the cutting off of fangs, the extreme longitudinal extension of the head portion, and a slight upturning of the snake's head, similar to that illustrated in Felch's patent, and a peculiar twist of the tail.

Whether in view of the known mechanical requirements of pencil clips, and of the existence of stock snake ornaments suitable to be bent to any desired shape, and of the prior illustration of snake ornamentation for a pencil clip by Felch, Byers can be regarded as the inventor of a patentable design, rather than as an adapter of an old design to a mechanical use, seems doubtful, in view of the opinion in Smith v. Whitman Saddle Co., 148 U. S. 674, 679, 13 Sup. Ct. 768, 37 L. Ed. 606. But for the purposes of this case, giving to the patentee the benefit of the doubt, it still seems necessary to hold that his patent is limited to the special configuration shown, and cannot cover broadly a pencil clip of snake form.

228 F.—46

In considering the question of infringement it is important to note that the defendant's snake clip is of independent origin. It was first made from the T. W. Lind & Co. snake ornament merely by bending. When, however, the defendant decided to manufacture them in quantities, it had new dies made by T. W. Lind & Co., which produced a snake with a much slenderer neck, though otherwise of the same form. This was done partly for mechanical reasons, to give the engaging end of the clip resiliency and thus form a better spring. It also gave a distinctive feature to defendant's clip—a rectangular bend of the snake at the engaging end of the clip.

The defendant's brief fairly states the comparison between the Byers design and the defendant's, as follows:

"In the Byers design the major part of the serpent's body constitutes the depending or arm portion of the clip. There is but a single complete coil, and that is near the tail. The tail itself is upwardly extended to form a closed triangular loop, which is a most striking feature of the design. The maximum breadth of the snake body is at the point where the body is bent to form the depending arm.

"In defendant's structure there are a plurality of coils, rather than a single coil, and these coils are in the central or body portion of the serpent, rather than near the tail; furthermore, there is no terminal loop in the tail. In all these respects defendant's design more nearly resembles that of Felch than it does the patented design. In defendant's design the narrowest portion of the serpent body is located at the point where the Byers serpent body is broadest, namely, where the depending arm joins the body. Not only is this a distinction in appearance, but it is a distinction of mechanical importance, as the depending arm in actual practice has practically no resiliency unless relatively slender at that point, as testified by Wall and Lind."

But the complainant himself gives important evidence as to the difference between his design, and defendant's. His application for the patent in suit was filed April 14, 1913. In April, May, or June of that year he made application to T. W. Lind & Co. for snake blanks. He testified that his object was "to get that very snake Pearce was using." Thereafterwards he had dies made, and closely copied defendant's design, which he is now using.

Thus his suit has for its object the appropriation of the defendant's design for himself, and the exclusion of the defendant from its use, rather than the protection or use of the design shown in his letters patent. This is practical evidence of the superiority of defendant's design, and of its substantial difference from complainant's.

I am of the opinion that the defendant has established its first defense of noninfringement.

The defendant next contends that, if its design be held to infringe the Byers patent, that patent is void because of prior knowledge and use.

The defendant has shown, by evidence of the most conclusive character, that the design which it now uses, and which complainant has copied, was on the market for about six months previous to complainant's application date. The T. W. Lind Company, upon previous orders for the modified snake blanks, had manufactured dies and had delivered snake blanks to defendant by October 10, 1912. By October 18, 1912, snake clips had been made and sold, and from that time

on they had been sold in considerable quantities, as appears not only from the sales book of complainant, but from the testimony of witnesses representing well-known firms who produced samples of their purchases.

On April 5, 1913, a large number of pencils provided with defendant's snake clips were distributed as souvenirs at a banquet of the New England Manufacturing Jewelers' & Silversmiths' Association, held in Providence, R: I. The souvenir pencil with defendant's clip attached was illustrated by a drawing published in a regular publication called "The Manufacturing Jeweler" on April 10, 1913.

The complainant's drawing reached the Patent Office on April 14, 1913. There is no testimony to show when it was prepared. As appears by the file wrapper, the original petition and power of attorney concluded with the words:

"Signed at New York * * * this 4th day of April, 1913.
                                    "George T. Byers."

The notary public's attestation left the date of the oath blank; i. e.:

"Sworn to and subscribed before me this ——— day of April, 1913."

A new oath was required by the Patent Office.

There is nothing in the patent record to show that Byers took any steps to patent his design at any time before defendant's design had become well advertised and well known to the trade.

It is clear beyond question, and is expressly conceded by complainant, that the burden is cast upon him to carry back his invention to a date earlier than October, 1912, at which time the defendant's present design was put on the market. I am also of the opinion that the burden rests upon the complainant to establish his date of invention as earlier than December 14, 1911; for upon hearing the oral testimony of Mr. D. W. Wall and Mr. Wm. G. Lind, and upon an examination of Defendant's Exhibit H, I am satisfied that snake clips were manufactured by the late Frank T. Pearce, the late Aldridge G. Pearce, and D. W. Wall, from the Lind blanks No. 932, and were attached to pencils and distributed as gifts on Christmas, 1911. These snake clips more closely resemble the patented design than defendant's present clips, in that they have the thick and inelastic neck.

This testimony is criticized by complainant as resting upon the uncorroborated testimony of Wall, and as insufficient under the rules. I believe the witness, however, and his story does not in its important particulars lack corroboration. Mr. Lind identifies the clip of Exhibit H as made from the No. 932 blank, and testifies that Mr. Aldridge G. Pearce applied to Lind & Co. for such snake ornaments in the latter part of 1911 or early in 1912. The making of a few clips for Christmas presents, or the furnishing of a few snake blanks for this purpose, were transactions not in the ordinary course of commercial manufacture and sale, and the failure to produce books verifying such transactions does not seem at all remarkable.

That the defendant ordered the making of new dies by Lind & Co., differing from the old only in the feature of a narrower neck, corroborates Wall's testimony that clips were first made from Lind's old

stock blanks, but were found too stiff to give the desired amount of spring.

Though the complainant, Byers, had knowledge of the defendant's manufacture at least as early as the time of his application to Lind & Co. for snake blanks like those used by defendant—i. e., in April, May, or June, 1913—his bill was not filed until January 14, 1915. Before that date both Mr. F. T. Pearce and his son, Aldridge G. Pearce, had died. Under the circumstances the defendant cannot be justly charged with any lack of diligence or failure to produce other corroborating witnesses to the manufacture in December, 1911.

The complainant, Byers, produced a snake clip, Exhibit 6, which he says was made in the early spring of either 1910 or 1911; that he went to a patent attorney by the name of Frederick Barker, No. 30 Church street, New York, and applied for a patent, and owing to the cost of the patent deferred taking it out; that he showed it to people in his shop and turned out quite a number. He produced also another sample of the same date, Exhibit 8, which he says was adapted for pencils. It differs from Exhibit 6 in having coils of smaller diameter, but was made from the same blank as Exhibit 6. Both of these exhibits are crude productions, and neither is a perfected commercial design; and it is evident that the drawing of the patent in suit was not made by copying either.

No other exhibits are produced, either from his factory or from customers, to show his production or sale of any snake clips, except those of the design copied from the defendant in 1913.

The only attempt to corroborate the complainant's testimony as to his production of clips like Exhibits 6 and 8 before October, 1912, was by the testimony of Mr. B. P. Soper, whose recollection both as to dates and as to the character or design of anything shown to him by Byers is so vague and uncertain as to have no force as corroboration. His testimony also tends to show that, if any attempts had been made by Byers to make a snake clip out of his stock blank, they had not been taken seriously and were abandoned. The complainant's proofs do not meet the requirements of the rules of law applicable to such cases.

Exhibits 6 and 8 do not prove the completion of the design of the patent in suit at any time before the date of the application.

Comparing defendant's clips with Complainant's Exhibits 6 and 8, rather than with the patent drawing, it seems impossible to hold that the resemblance is such as to deceive an ordinary observer, or that they are substantially the same in point of artistic design.

I am of the opinion that the defendant does not infringe the patent in suit, and that, if the patent should be so liberally interpreted as to cover the defendant's design, it is void on the ground that the defendant's design of December, 1911, and also its design of October, 1912, now used by both complainant and defendant, are proved of earlier date than the design of the patent in suit.

The bill will be dismissed.